### GEORGE MORTON v. BLANKENSHIP & RIDER.

Ejectment, by the holder of a land certificate, against one who had a patent for the same land, issued on a younger certificate. Held, that the oldest certificate prevailed; and the Commissioner of the Land Office had no authority, under the laws of the United States, to vacate it and issue another certificate with a patent.

*M. Frissell,* counsel for plaintiff:

As a preliminary question of the first magnitude in this and many other cases that will arise, it is important to settle the comparative value of a register's certificate, and a patent for the same land. Our law (Statutes of Missouri, page 234,) makes the register's receipt evidence in an action of ejectment, and a patent is nothing more; and so far as their dignity is concerned, the law makes the receipt and patent precisely the same. Both are then the highest evidence of title known to our law; one has no more validity than the other. A certificate of entry is evidence that the land has been sold by the United States, and a patent is nothing more.

The register and receiver are the authorized agents of the government for the sale of land; and when they have sold it in pursuance of law, the United States have parted from any further control over it as proprietors, and have no more legal right to sell the same land, than a private person would have to sell land, receive his pay, and convey, and then sell, receive pay, and convey the same land to the next applicant.

To mention a case more completely analagous to the present: A. sells land to B, receives his pay in full, and gives a bond for a title at a future day when convenient to make it. A. afterwards concludes that this land would suit C. better than it would B. A. thereupon sells it to C, and C. buys and pays for it, with the full knowledge of the former sale to B, and of B's payment of the purchase money, and also, the written contract between them. A. then, to make the matter sure, executes a deed with great solemnity to C. We all know that C. by this transaction, acquires no title, and if the statutes should make this title bond of B. evidence in an action of ejectment as it does the register's receipt, this title bond must prevail over the deed, with all its solemnities, in an action at law; where land has been sold by the legal agent of the government, not even Congress has power to vacate the sale. The sale is good to all intents and purposes, until the same has been vacated by due course of law. The principles here laid down are fully sustained by the case of John Gallipot, on the demise of John Bumer, v. Jonathan and Moses Manlove, decided, in the supreme court of Illinois, December term, 1834.

The next question arising in this case is, whether the commissioner of the general land office is legally authorized to vacate an entry with the register. The act of the 25th of April, 1812, creates the general land office in the department of. the treasury, and if that act authorizes him to vacate entries either by express enactment or implication, I am unable to see it—Strong's Laws of U. S. vol. 2, p. 1238. And as it is against the policy of the laws of the United States to give judicial power to any departments of the government, except the judi-' ciary, I will take it for granted that it has not been given in this instance, and that the entry of Haydon is just as valid as it would have been if the commissioner had done nothing with it. This vacating of entries then by the commissioner, is an assumption of power which not ·even the creators of his office can exercise, much less delegate to him. It is a judicial tribunal, and that alone which. can vacate an entry that has been made in pursuance of laws, and of such entry the certificate of the register is as high evidence, by our laws, as the patent, and consequently must have the same legal effect. If the elder patent or certificate was issued by mistake, or upon false suggestion, it is voidable only, and unless letters patent or certificates of registers are absolutely void upon the face of them, or the issuing them was without au-

thority, or was prohibited by statute, they can only be avoided by a regular course of pleading, in which the fraud, irregularity, or mistake is directly put in issue— Jackson ex. dem. Manenus v. Lewton, 10 Johns. 22. If the principles here contended for be correct, the circuit court erred in giving the sixth and seventh instructions prayed for by defendants, and also erred in not giving the second and third prayed for by the plaintiff—Record, pages 3, 4 and 5.

Admitting that the commissioner of the general land office has the power to vacate an entry once regularly made, what evidence of the fact was offered by the defendants? It must be presumed that vacating an entry is not a matter of so small moment that no record is made of it, and where is the proof? where is the exemplification under the official seal? The law certainly requires this or a sworn copy, or a copy by an authorized officer. Neither was produced, and the statement of Guild in his deposition, that the entry had been vacated, and that he had been so informed, is all the evidence of this important fact that was offered. The fact of the entry vacated, was the main one on which the jury predicated their verdict for the defendants, and therefore, the finding was contrary to evidence; and the refusal of the court to give the seventh instruction prayed for by the plaintiff, that there is no legal evidence that the entry by Haydon has been vacated, the only evidence thereof being the declaration of John Hays in a paper referred to in Guild's deposition, marked C, who is neither the keeper of the records of the general land office, or legally has the inspection of the same, is erroneous.

The entry of Lowe is not warranted by law, because it was made after the pre-emption law had expired. A corrected entry is the same as a new entry, and can take date only from the time that the correction is made— Cox's Digest 699, sec. 176.

If the commissioner of the general land office had authority to vacate entries during the time the pre-emption law was in force, his power ceased with the law, and all entries and rights under entries, must, after the expiration of the law, remain in *statu quo*, as far as the government or its officers had any power or authority to act. Their power to grant pre-emptions, ceased the day the law expired, and all who had not at that time made known their rights under the law, must be considered as having abandoned their rights. *Vigilantibus non dormientibus servit lex*, is a maxim that may well apply in

this case, if the court should be of opinion that the commissioner has the power, in any case, to vacate an entry.

This court has, in a great measure at least, settled the law upon this point, in the case of Gustavus A. Byrd *et al* v. Ward & Cravens, 1 Mo. Rep. 398. In this case it is expressly decided that the decision of the register and receiver is not conclusive between individuals as it respects their rights, but it is only conclusive as against the government that a pre-emption exists, &c.

MAY TERM, 1838.

Morton
v.
Blankenship &
Rider.

*P. Cole*, counsel for defendants:

It appears to me that this record presents but a single question for the consideration of the court, and that is this: whether Haydon's cancelled entry, being prior in time, shall be better evidence of legal title in an action of ejectmet, than a patent for the same land younger than the vacated entry? This question, upon principle and authority, is in favor of the patent, even was Haydon's entry in *statu quo* and not cancelled. The law is that, in an action of ejectment, the legal title must prevail, and the defendant will not be allowed to set up an equitable title in an action of ejectment in defence, when the legal title is in the plaintiff—1 Durn. & East's Rep. 47; 2 Johns. Cas. 321; 2 Johns. Rep. 221–5–6. That in ejectment the question of title is matter of law, and no act *in pais* or parol agreement, can be set up against the legal title—Mullanphy v. Redman, 2 S. A. Rep. 226. Until the patent issued, the legal title to the land was in the United States; but when it did issue, the United States were divested of their right, and the same vested in the patentee. There can be but one right of entry upon the land, and that passed by the patent to the patentee, and a legal right of entry upon this land remained in the United States until the same was divested by the patent to Barney Lowe. It has been the uniform practice in the courts to look to the elder patent, and to give it effect, and not to look at an equitable claim, but only to look to the title under the great seal—Jackson v. Lauton, 10 Johns. Rep. 22. A patent from government for land has the legal effect of a feoffment at common law; it vests in the patentee the right of possession and right of property—2 Blay. 190.

It may be said that by the laws of this State, an action of ejectment may be maintained where the plaintiff claims the possession of the premises under an entry with the register and receiver of the land of the United States against any person not having a better

title, and that this law will aid the plaintiff. I should think not; because the title of plaintiff under Haydon, is met by the better legal title in Lowe, and because the title of Haydon has been cancelled by the officers of the general government under authority of law—Act of Congress, 24th May, 1824. It appears to me that the rule of *caveat emptor* applies clearly to the assignees of certificates of entries of the public lands, because there are six months given by law for suggesting error and mistake in such entries, and if such are found to exist, such entries may be vacated; a purchaser therefore takes the assignment, subject to their contingency, and is bound to know the law—Ingersoll's Digest, 378. There is another question which presents itself, which I believe to be of some importance. It is this: The authority, of a State court to decide upon the legal or illegal exercise of power by the general government in the disposal of the lands of the United States. The constitution of the United States provides that Congress shall have power to dispose of, and to make all needful rules and regulations respecting the territory belonging to the United States—Con. U. S. 4th article, 3d section, 2d clause. It appears to me, under this clause of the constitution, that with regard to the public land, the government of the United States is the only original source of title; that the power of Congress over the public territory is clearly exclusive and universal, and their legislation is subject to no control, but is absolute and unlimited, unless so far as it is effected by the ordinance of 1787—3 Kent's Com. 307. For a State court, therefore, to undertake to decide whether the official acts of the officers of the general government in reference to the sale of the public lands were legal or illegal, void or voidable, when the decision of such questions pertain, beyond question, to the general government, it appears to me, would be an infringement of that clause of the constitution before referred to; it would be the exercise of a power not warranted by the constitution—Story's Com. on Con. 3 vol. 198. This court is here called upon to give vitality to an entry that has been decided by the tribunal created by Congress to possess no legal validity whatever. This court is here required to vacate a patent by a collatteral decision in an action of ejectment, in opposition to the declared authority of the general government; which patent, under the law of the land, can only be vacated by a *scire facias* issued for the special purpose of vacating it. In conclusion, therefore, I have only to add

that the plaintiff, Laville, has shown no lawful right to recover any part of the land in controversy, and that the decision of the circuit court ought to be affirmed.

EDWARDS, Judge, delivered the opinion of the court.

This was an action of ejectment, commenced by Morton against Blankenship & Rider, to recover the north-west quarter of section eighteen, in township thirty-two north, range nine west, designated as lot numbered two, containing one hundred and fifty-six acres, and seventy-two hundredths of an acre, situate in the county of Pulaski. Blankenship & Rider pleaded not guilty, and Morton joined issue. Verdict and judgment were for defendants, and plaintiff moved for a new trial, which motion the court overruled. The case is brought here by writ of error.

On the trial, the plaintiff gave in evidence a certificate of the receiver of the land office at Jackson, to Newel Haydon, dated 14th April, 1831, for the land described in the declaration, and a deed from Haydon to plaintiff and Joseph C. Laville, dated 30th May, 1831, and proved the defendants in possession of the land.

The defendants proved that on the 14th day of December, 1830, Barney Lowe entered in the land office at Jackson, as a pre-emption right, the east half of the southwest quarter of section seven, township thirty-two north, range nine west, containing eighty acres; that this entry was erroneously made; that his pre-emption right was on the northwest quarter of section eighteen, township thirty-two, range nine, being the same tract described in plaintiff's declaration and entered by Haydon. This error in Lowe's entry was communicated to the commissioner of the general land office, who cancelled this erroneous entry, and authorized Lowe to enter section eighteen, township thirty-two, range nine, by paying the difference in value between that and his erroneous entry; and accordingly, on the 9th of October, 1831, upwards of nine months after his erroneous entry, Lowe entered lot number two, in section eighteen, township thirty-two, range nine, the same lot entered by Haydon, and on this entry a patent was issued to Lowe, dated the 6th day of March, 1835, which patent was given in evidence. Blankenship & Rider proved that they were in possession under Lowe. It is stated in the deposition of a witness, that the entry of Haydon appears to have been cancelled by order of the commissioner of the gen-

MAY TERM, 1838.

Morton.
v.
Blankenship & Rider.

eral land office. The plaintiff moved the court to instruct the jury:

1. That the certificate produced in evidence, marked E, "Receiver's Office, Jackson, Mo. April 14, 1831, No. 992, received from Newel Haydon, the sum of $195 90, being in full for lot No. 2, N. W. qr. section No. 18, township No. 32 N., range No. 9 W., containing 156 acres and 72 hundredths, at the rate of $1 25 per acre, $195 90. (Signed) John Hays, receiver," is to be received in evidence, and is of equal validity with any patent.

2. That the decision of the receiver and of the commissioner of the general land office, is not conclusive of the rights of the parties in this action, and that it has no binding force upon the rights of the parties.

3. That such decision is merely the opinion of persons conversant in matters of pre-emption, and as such is entitled to some weight, but in no case has the effect of a judicial decision.

4. That if the jury believe that the plaintiff, in this action, is an innocent purchaser, having *bona fide* purchased the land for a valuable consideration, at a time when there was no adverse claim, they must find for the plaintiff.

5. That there is no legal evidence that the entry by Haydon has been vacated. These instructions the court refused, and the plaintiff excepted. The defendant then moved the following instructions, which were given by the court; to the giving of which the plaintiff excepted.

1 and 2. Both being in substance, that if the jury find from the evidence that the commissioner of the general land office has vacated the certificate issued to Newel Haydon for the land in suit, then they must find a verdict for the defendant.

Ejectment, by the holder of a land certificate, against one who had a patent for the same land issued on a younger certificate. Held, that the oldest certificate prevailed; and the Commissioner of the Land Office had no authority, under the laws of the United States, to vacate it and issue another certificate with a patent.

In that mode of examining this case which seems the most convenient to me, the following questions will arise: Had the commissioner of the general land office, 1. The power to correct Lowe's entry? 2. The power to transfer Lowe's entry to the land covered by Haydon's entry? 3. The power to vacate Haydon's entry? 4. Is a certificate of entry with the register and receiver, which is anterior in date, evidence sufficient to support ejectment against a patent for the same land, which is posterior in date?

In the first place, it may be well to examine that part of the act of Congress of the 24th of May, 1824, which governs this case. The first section of this act provides

for a correction and transfer of entries in certain cases, when a mistake has been committed "in the true numbers of the tract intended to be entered." The correction can be made in cases occurring before the passage of the act, and "in all cases of an entry hereafter made of a tract of land not intended to be entered by a mistake of the true numbers of the tract intended to be entered; where the tract thus erroneously entered does not in quantity exceed one half section, and when the certificate of the original purchaser or purchasers has not been assigned, or the right of the original purchaser or purchasers in any way transferred, and when six months from the time the entry shall have been made, may not have elapsed, or the patent issued for the tract erroneously entered"—sec. 1, of the act of Congress. If none of these circumstances occur to prevent the correction, and a mistake has been committed in the "true numbers" of the entry, then the mistake may be corrected, and the entry changed to the tract "intended to be entered, if unsold; but if sold, to any other tract liable to entry: provided, that the rights of third persons be not affected"— sec. 1, of the act of Congress. To avail himself of the privilege of correcting an erroneous entry, "the purchaser, or in case of his or her death, the legal representative must file his or her affidavit, with such additional evidence as can be procured, showing the mistake of the numbers of the tract intended to be entered, and that every reasonable precaution and exertion had been used to avoid the error with the register and receiver of the land district within which such tract of land is situated"—sec. 1, of the act of Congress. This evidence, together with their own opinions in writing as to the existence of the mistake, and the credibility of the persons testifying thereto, the register and receiver are required to transmit to the commissioner of the general land office—sec. 1, of the act of Congress. The oath of the person interested will, in no case, be sufficient to authorize a change of entry; bnt if corroborated by other testimony, and the commissioner of the general land office "be entirely satisfied that the mistake has been made, and that every reasonable precaution and exertion had been made to avoid it, (he) shall be authorized to change the entry, and transfer the payment from the tract erroneously entered to that intended to be entered, if unsold; but if sold, to any other tract liable to entry, provided, such change and transfer shall not affect the rights of third persons"—sec. 1, of the act of Congress.

23

MAY TERM,
1838.

Morton
v.
Blankenship &
Rider.

Was the commissioner of the general land office, under this law, authorized to change Lowe's entry? He was authorized to make the change only in cases where the mistake occurred in the " true numbers" of the land intended to be entered. It seems, from his own showing, that Lowe entered the tract which he intended to enter, but that the tract entered happened not to embrace a mill which he expected it to include. This fact was apparent on having the land surveyed. There was no mistake, then, about the numbers of the land on either side of the line. The mistake seems to have been as to the true position of the line between sections seven and eighteen, a matter at once ascertained by surveying. This then seems not to be the kind of error which the law authorizes the commissioner to correct, being an error as to the position of the mill, and not as to the numbers of the land. But supposing this to be that kind of case in which the commissioner was authorized to make the correction, still another objection existed to the exercise of that power. The commissioner derives his power to make corrections from the act of Congress of 24th May, 1824, before cited, and that act authorizes him to make the correction only in case it is done within six months from the time of making the entry.

In Lowe's case no attempt at a correction was made until after more than six months from the date of the entry had elapsed. The commissioner then had no power to make the correction in Lowe's entry.

Had the commissioner power to transfer Lowe's entry to the land covered by Haydon's entry? Two objections existed to the exercise of this power. In the first place, the commissioner had no power to transfer Lowe's entry to any other point until it could be raised from section seven, and this, after six months had elapsed, he had no power to do. But if he had had the power to raise Lowe's entry from section seven, still he had no power to transfer it to section eighteen, because the act of Congress authorizes him " to transfer the payment from the tract erroneously entered to that intended to be entered," only in case the tract intended to he entered remained unsold; but if the tract intended to he entered be sold, then the transfer must be to some other tract liable to entry. Here, the tract which Lowe says he intended to enter, had been sold to Haydon, being part of section eighteen. The commissioner then had no power to transfer Lowe's entry to this tract while Haydon's entry remained in the way, even had it been raised

from section seven. If Haydon had entered in section eighteen by mistake in the true numbers of the tract intended to be entered, the commissioner might, on Haydon's application, have changed this entry, and have transferred it to another tract liable to entry, in which event Haydon's entry would have been legally vacated, then the commissioner might have transferred Lowe's entry to section eighteen, although it had once been sold to Haydon, if he could have first raised Lowe's entry from section seven. But Haydon did not apply for a change in his entry. In no other event could Lowe's entry have been transferred to Haydon's. Had the commissioner the power to vacate Haydon's entry? This point has just been noticed. On Haydon's application, had Haydon made out a case as required by the act of Congress referred to above, the commissioner clearly had the power to change his entry, which would have been equivalent to vacating it. But had the commissioner power to vacate Haydon's entry to make room for Lowe's? This is a power not given the commissioner by the act of Congress. Haydon had purchased the land and paid for it, and the executive officers of the United States had no further control over it, unless Haydon himself had applied to have his entry changed. No person can "be deprived of life, liberty or property, without due process of law"—Art. 5, Amendments to the Constitution. The proceedings by which Haydon's entry was attempted to be vacated, was clearly not a proceeding authorized by any law of the land, and was therefore an attempt to deprive him of his property "without due process of law." If his title was defective, this defect, under the existing laws, could be determined only in the courts of justice of the the country. In the 2d vol. of his Commentaries, p. 13, Chancellor Kent says, "it may be received as a self-evident proposition, universally understood and acknowledged throughout this country, that no person can be taken or imprisoned, or disseised of his freehold or liberties, or estate, or exiled, or condemned, or deprived of life, liberty or property, unless by the law of the land, or the judgment of his peers." The attempt to vacate Haydons's entry, was an attempt to deprive him of his property without the intervention of "the judgment of his peers," against the law of the land, without any "due process of law," and in a mode unknown to the law. In attempting to vacate Haydon's entry then, the commissioner attempted to do that which he had no power to do, and as he had no power to va-

cate it, Haydon's entry was not vacated. This brings us to the last point to be noticed.

Is a certificate of entry with the register and receiver, which is anterior in date, evidence sufficient to support ejectment against a patent for the same land, which is posterior in date? Under our act regulating the action of ejectment, "an entry with the register and receiver of any land office of the United States" will maintain ejectment against any person not having a better title— sec. 2, R. C. 1835, p. 234. The patent can do nothing more. A certificate and patent then, under our act regulating the action of ejectment, are equal in dignity, and consequently that which is anterior in date, must prevail against that which is posterior. In this case Haydon's certificate of entry was dated the 14th of April, 1831; the patent to Lowe, under which defendants claim, was dated 6th day of March, 1835; the certificate of entry with the register and receiver being anterior in date, was sufficient to maintain this action against the patent, that being posterior in date.

The court erred in refusing the first four instructions, as numbered in this opinion, asked by the plaintiff. The instructions asked by the defendants might have been properly enough given. They were in substance: that if the jury found from the evidence that the commissioner of the general land office had vacated the certificate issued to Newel Haydon for the land in suit, then they must find a verdict for the defendants. Lowe's patent would certainly have been good in this action against a vacated certificate. But the court erred further in refusing the fifth instruction, as here numbered, asked by the plaintiff. This instruction was, that there was no legal evidence that the entry by Haydon had been vacated. The only evidence on this point was the statement of a witness that Haydon's entry appeared to have been cancelled by order of the commissioner of the general land office. If the entry was cancelled, the cancelling must have been made a matter of record, or must have existed in a public document; and parol evidence will not be admitted to prove a matter of record or the existence of a public document. But it has been before shown that in this case the commissioner had no power to vacate Haydon's certificate of entry. The judgment of the circuit court ought, therefore, to be reversed, and the other judges concurring, it is reversed and remanded.